JS 44   (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Dennis Trotter and Christina Johnsten

**(b)** County of Residence of First Listed Plaintiff   Cascade
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Scott B. Freemann, Esq., Freemann Law Offices 3101 W. Glenwood Ave
G-103, Philadelphia, PA 19121 (215) 564-7400

## DEFENDANTS

United Lutheran Seminary, Dr. Richard Green and James Dunlop

County of Residence of First Listed Defendant   Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☒ 3  Federal Question *(U.S. Government Not a Party)* |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                      *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**   **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane   ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product   Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability   ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &   Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander   Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'   Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability   ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine   Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product   Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability   **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle   ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle   ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | Protection Act |
| ☐ 190 Other Contract | Product Liability   ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal   Property Damage | Relations | ☐ 864 SSID Title XVI | ☐ 850 Securities/Commodities |
| ☐ 196 Franchise | Injury   ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | Exchange |
| | ☐ 362 Personal Injury -   Product Liability | ☐ 751 Family and Medical | | ☐ 890 Other Statutory Actions |
| | Medical Malpractice | Leave Act | | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS**   **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights   **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 895 Freedom of Information |
| ☐ 220 Foreclosure | ☐ 441 Voting   ☐ 463 Alien Detainee | Income Security Act | or Defendant) | Act |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment   ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/   Sentence | | 26 USC 7609 | ☐ 899 Administrative Procedure |
| ☐ 245 Tort Product Liability | Accommodations   ☐ 530 General | | | Act/Review or Appeal of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities -   ☐ 535 Death Penalty | **IMMIGRATION** | | Agency Decision |
| | Employment   **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of |
| | ☐ 446 Amer. w/Disabilities -   ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | State Statutes |
| | Other   ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education   ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - | | | |
| | Conditions of | | | |
| | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from Another District *(specify)*   ☐ 6 Multidistrict Litigation - Transfer   ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. 2000(e), et seq.; 42 U.S.C. 1981 ("Section 1981"); 29 U.S.C. 621 ("ADEA")

Brief description of cause:
Plaintiffs are alleging retaliation.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
02/03/2020

SIGNATURE OF ATTORNEY OF RECORD
*[signature]*

---

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Dennis Trotter and Christina Johnsten | : | CIVIL ACTION |
| Plaintiffs, | : | |
| v. | : | |
| United Lutheran Seminary, et al. | : | |
| Defendants. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.　　　　　( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
　　and Human Services denying plaintiff Social Security Benefits.　　　　　　　　( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.　( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
　　exposure to asbestos.　　　　　　　　　　　　　　　　　　　　　　　　　　( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
　　commonly referred to as complex and that need special or intense management by
　　the court. (See reverse side of this form for a detailed explanation of special
　　management cases.)　　　　　　　　　　　　　　　　　　　　　　　　　　　( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.　　( X )

| | | |
|---|---|---|
| February 3, 2020 | _Attorney-at-law_ | Plaintiffs |
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 564-7400 | (215) 564-7406 | sbf@freemannlaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ Dennis Trotter and Christina Johnsten, Great Falls, MT 59405 _____

Address of Defendant: _ United Lutheran Seminary, Philadelphia, 7301 Germantown Avenue, Philadelphia, PA 19119 _

Place of Accident, Incident or Transaction: _____ Philadelphia, PA _____

---

*RELATED CASE, IF ANY:*

Case Number: _____   Judge: _____   Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year   Yes ☐   No ☑
   previously terminated action in this court?

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit   Yes ☐   No ☑
   pending or within one year previously terminated action in this court?

3. Does this case involve the validity or infringement of a patent already in suit or any earlier   Yes ☐   No ☑
   numbered case pending or within one year previously terminated action of this court?

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights   Yes ☐   No ☑
   case filed by the same individual?

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 02/03/2020 _____   _____ *Attorney-at-Law / Pro Se Plaintiff* _____   _____ 82030 _____
                                                                                            *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

**A.    *Federal Question Cases:***

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☑ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☐ 11. All other Federal Question Cases
       *(Please specify):* _____

**B.    *Diversity Jurisdiction Cases:***

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* _____
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
       *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _ Scott Bennett Freemann, Esq. _, counsel of record *or pro se plaintiff*, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☑ Relief other than monetary damages is sought.

DATE: 02/03/2020 _____   _____ *Attorney-at-Law / Pro Se Plaintiff* _____   _____ 82030 _____
                                                                                            *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DENNIS TROTTER**<br>**Great Falls, MT 59405,** | : | **Civil Action No.** |
| | : | |
| **and** | : | |
| | : | |
| **CHRISTINA JOHNSTEN** | : | |
| **Great Falls, MT 59405,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **UNITED LUTHERAN SEMINARY** | : | |
| **7301 Germantown Avenue** | : | |
| **Philadelphia, PA 19119,** | : | |
| | : | |
| **and** | : | **Jury Trial Demanded** |
| | : | |
| **DR. RICHARD GREEN** | : | |
| **c/o United Lutheran Seminary** | : | |
| **7301 Germantown Avenue** | : | |
| **Philadelphia, PA 19119,** | : | |
| | : | |
| **and** | : | |
| | : | |
| **JAMES DUNLOP** | : | |
| **c/o United Lutheran Seminary** | : | |
| **7301 Germantown Avenue** | : | |
| **Philadelphia, PA 19119,** | : | |
| | : | |
| **Defendants.** | : | |

## COMPLAINT

### INTRODUCTION

1.     This is an action for reinstatement, damages and other relief to redress defendants' employment retaliation and hostile work violations, and

1

violations of rights secured to plaintiffs by Title VII of the Civil Rights Acts of 1964, 42 U.S.C. § 2000e, *et seq.,* as amended by the Civil Rights Act of 1991 ("Title VII"), the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991 ("Section 1981"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* ("ADEA"), the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.* ("PHRA"), and the Philadelphia Fair Practices Ordinance, Chapter 9-1100 of the Philadelphia Code, titled in full as "Philadelphia Fair Practices Ordinance: Protections Against Unlawful Discrimination", and the regulations thereunder ("PFPO").

**PARTIES**

2.     Plaintiff Dennis Trotter ("Mr. Trotter") is an adult individual residing in Great Falls, Montana 59405.

3.     Plaintiff Christina Johnsten ("Ms. Johnsten") is an adult individual residing in Great Falls, Montana 59405.

4.     Mr. Trotter and Ms. Johnsten are collectively referred to herein as "plaintiffs".

5.     Mr. Trotter and Ms. Johnsten are married to one another.

6.     Defendant United Lutheran Seminary ("ULS"), a graduate professional school that provides theological educational services, has a place of business at 7301 Germantown Avenue, Philadelphia, Pennsylvania 19119.

7.     ULS is in an industry affecting interstate commerce and regularly conducts business in the Commonwealth of Pennsylvania.

8.     Upon information and belief, defendant Dr. Richard Green ("Interim President Green") is an adult individual residing in the State of Arizona in Tucson.

9.     Upon information and belief, Dr. Richard Green is the former Interim President of ULS and was a supervisor with immediate authority over plaintiffs.

10.    Upon information and belief, defendant James Dunlop ("Acting

2

President Dunlop") is an adult individual residing in the Commonwealth of Pennsylvania in Mechanicsburg.

11.    Acting President Dunlop is the former Acting President of ULS and was a supervisor with immediate authority over plaintiffs.

12.    ULS, Interim President Green and Acting President Dunlop are collectively referred to herein as "defendants".

13.    At all times material hereto, ULS employed more than fifty (50) full time employees.

14.    At all times material hereto, ULS acted by and through its authorized agents, servants, and/or employees acting within the course and scope of their employment with ULS and in furtherance of ULS's business.

15.    At all times material hereto, ULS acted as an employer within the meaning of the statutes and ordinance (Title VII, the ADEA, the PHRA and the PFPO), which form the basis of this matter.

16.    Plaintiffs were employees of ULS within the meaning of the statutes and ordinance (Title VII, the ADEA, the PHRA and the PFPO), which form the basis of this matter.

## JURISDICTION AND VENUE

17.    The causes of action which form the basis of this matter arise under Title VII, Section 1981, the ADEA, the PHRA, and the PFPO.

18.    The District Court has jurisdiction over Count I (Title VII) pursuant to 42 U.S.C. § 2000e-5 and 28 U.S.C. § 1331.

19.    The District Court has jurisdiction over Count II (Section 1981) pursuant to 42 U.S.C. § 1981 and 28 U.S.C. § 1331.

20.    The District Court has jurisdiction over Count III (ADEA) pursuant to 29 U.S.C. § 626(c) and 28 U.S.C. § 1331.

21.   The District Court has supplemental jurisdiction over Count IV (PHRA) pursuant to 28 U.S.C. § 1367.

22.   The District Court has supplemental jurisdiction over Count V (PFPO) pursuant to 28 U.S.C. § 1367.

23.   The District Court also has jurisdiction over all counts pursuant to 28 U.S.C. § 1332 since the amount in controversy in the present action exceeds the sum or value of seventy five thousand dollars ($75,000.00), exclusive of interests and costs, and there exists complete diversity of citizenship, as Plaintiffs are citizens of the state of Montana and Defendants are not citizens of the State of Montana

24.   Venue is proper in the District Court for the Eastern District of Pennsylvania under 28 U.S.C. § 1391(b) as this is where one or more defendants reside, where a substantial part of the events and omissions giving rise to the claims occurred, and where one or more defendants may be found.

25.   On or about November 7, 2018, plaintiffs filed retaliation complaints with the Equal Employment Opportunity Commission ("EEOC")(charge no. 530-2019-00805 (Trotter) and charge no. 530-2019-00810 (Johnsten), which were cross-filed with the Pennsylvania Human Relations Commission ("PHRC") ("Administrative Complaints").  A copy of their Administrative Complaints without referenced exhibits thereto is attached hereto as Exhibit "1" and incorporated by reference herein.

26.   On or about February 1, 2019, plaintiffs filed additional retaliation complaints with the EEOC, which were cross-filed with the PHRC ("Second Administrative Complaints") and which were docketed under the following same charge numbers – charge no. 530-2019-00805 (Trotter) and charge no. 530-2019-00810 (Johnsten).  A copy of their Second Administrative Complaints without referenced exhibits thereto is attached hereto as Exhibit "2" and incorporated by reference herein.

27.   On or about November 14, 2019, the EEOC issued Notices of Right

4

To Sue ("Notices") to plaintiffs.  A copy of the Notices is attached hereto as Exhibit "3" and incorporated by reference herein.

28.    Less than ninety days has passed since plaintiffs received their Notices.

29.    More than a year has passed since plaintiff's Administrative Complaints and Second Administrative Complaints were filed.

30.    Plaintiffs have fully complied with all administrative prerequisites for the commencement of this action.

31.    Pursuant to Rule 5.1.1. of the Local Rules of Civil Procedure of the United States District Court for the Eastern District of Pennsylvania that prohibits the averment of specific monetary damages, plaintiffs aver only that the amounts in controversy each exceed the jurisdictional amount for arbitration of One Hundred and Fifty Thousand Dollars ($150,000.00) exclusive of interests and costs in accordance with the Local Rules of the District Court.

## FACTS

32.    ULS was formed on July 1, 2017, via a consolidation of two Lutheran seminaries: Lutheran Theological Seminary at Philadelphia ("LTSP") and Lutheran Theological Seminary at Gettysburg ("LTSG").

### *ULS employment*

33.    Prior to the consolidation, LTSP first employed Mr. Trotter in 2015 as its Vice President for Advancement.

34.    Prior to the consolidation, LTSP first employed Ms. Johnsten in 2015 as its Vice President for Student Vocation and Formation.

35.    In connection with the consolidation of LTSP and LTSG, Mr. Trotter was promoted to the position of Senior Vice President for Advancement for ULS.

36.     In connection with the consolidation of LTSP and LTSG, Ms. Johnsten was promoted to the position of Vice President of Student Services and Enrollment for ULS.

37.     On November 1, 2017, Mr. Trotter was promoted to the position of Chief Operating Officer ("COO") for ULS.

38.     Mr. Trotter's annual salary as COO was $125,000 and he received valuable benefits, including, but not limited to, health insurance and retirement contributions equal to ten percent (10%) of his annual salary.

39.     Ms. Johnsten's annual salary as Vice President of Student Services and Enrollment was $80,000 and she received valuable benefits, including, but not limited to, health insurance and retirement contributions equal to ten percent (10%) of her annual salary.

*Protected Activities and Resulting Retaliation*

40.     On March 14, 2018, James Dunlop became the Acting President of ULS.

41.     Prior to becoming Acting President, James Dunlop had served on the ULS Board and was a member of the Board's Executive Committee.

42.     On March 16, 2018, Mr. Trotter met with Acting President Dunlop to discuss the status of operations under his oversight as COO.

43.     During the March 16, 2018 meeting with Acting President Dunlop, Mr. Trotter raised concerns regarding several race and age based discriminatory events at ULS, including, but not limited to, Acting President Dunlop's prior reference to the termination of the former President of ULS as a "lynching".

44.     During the March 16, 2018 meeting with Acting President Dunlop, Mr. Trotter requested that ULS investigate the discriminatory events he raised.

45.     On March 17, 2018, Mr. Trotter sent a follow-up email to Acting President Dunlop, which, in part, reiterated his concerns regarding acts of

racism and ageism at ULS and asked Acting President Dunlop to initiate an investigation.

46.    Following the March 16, 2018 meeting and the submission of his March 17, 2018 email, Acting President Dunlop's demeanor towards Mr. Trotter changed.

47.    Shortly after the March 16, 2018 meeting and the submission of his March 17, 2018 email, ULS and Acting President Dunlop subjected Mr. Trotter to a sustained campaign of antagonism and a retaliatory hostile work environment.

48.    On March 27, 2018, without any advance warning and just ten minutes before the start of the Philadelphia Advancement Team meeting, Acting President Dunlop told Mr. Trotter that he would no longer have responsibility for advancement related job responsibilities, and that such responsibilities had been assigned to Dr. Angela Zimmann ("Dr. Zimmann"), a junior employee with next to no experience within those areas.

49.    On March 27, 2018, Acting President Dunlop also told Mr. Trotter that he would not be permitted to participate in the Philadelphia Advancement Team staff meeting taking place later that day, even though the other attending staff members reported directly to Mr. Trotter.

50.    Upon information and belief, at the March 27, 2018 meeting with the Philadelphia Advancement Team, Acting President Dunlop stated "we are not going back to Egypt to eat watermelon" in reference to both the claims of racism related to a letter written by the Gettysburg Advancement staff and a proposed meeting with African-American students scheduled to take place later than afternoon.

51.    On April 2, 2018, Mr. Trotter was asked to submit to an interview on April 6, 2018 in connection with a grievance filed by Dr. Zimmann that falsely claimed that Mr. Trotter had created an unsafe and hostile work environment.

52.     Upon information and belief, Acting President Dunlop immediately engaged an outside consultant, John Campanella of the Lyons Company, to investigate Dr. Zimmann's grievance.

53.     On April 4, 2018, Mr. Trotter submitted a grievance to ULS, which reiterated his concerns regarding various race and age based discriminatory practices at ULS and memorialized the retaliation he had suffered to date.

54.     Mr. Trotter's April 4, 2018 grievance once again asked ULS to initiate an investigation into discriminatory practices at ULS and to cease retaliating against him.

55.     On April 6, 2018, Mr. Trotter met with Mr. Campanella in connection with the investigation of Dr. Zimmann's grievance.

56.     On or about April 9, 2018, Mr. Campanella forwarded a letter to Acting President Dunlop, which confirmed that Mr. Trotter had not created a hostile work environment or engaged in any unlawful behavior.

57.     Despite multiple requests, Acting President Dunlop refused to give Mr. Trotter a copy of Mr. Campanella's April 9, 2018 determination or confirm the results of that investigation in writing.

58.     In April 2018, Acting President Dunlop excluded Mr. Trotter from participating in the hiring of a major gift officer for ULS.

59.     On April 13, 2018, Ms. Johnsten submitted a grievance, which raised, among other things, concerns about systemic racism at ULS and noted the retaliation she had suffered for previously objecting to such racism at ULS.

60.     ULS and Acting President Dunlop refused to timely address the grievances of Mr. Trotter and Ms. Johnsten.

61.     On April 13, 2018, Acting President Dunlop apologized in writing for his past inappropriate actions by stating: "On a personal note, I have been called to task for some of my own comments and use of particular terms that have caused pain for people.  I sincerely apologize for those things that I have said or left unsaid."

8

62.    On April 20, 2018, Mr. Trotter once again asked ULS to investigate his grievance.

63.    On April 20, 2018, Mr. Trotter once again asked for a copy of Mr. Campanella's findings regarding Dr. Zimmann's unfounded grievance.

64.    On about April 20, 2018, Acting President Dunlop appointed himself and five other individuals to serve on an interview team to find and select his replacement.

65.    Acting President Dunlop did not ask Mr. Trotter to join the interview team as would be normative for an organization's COO.

66.    However, Acting President Dunlop asked Dr. Zimmann to serve on the interview team.

67.    On May 2, 2018, ULS finally engaged Andrea Merrick, Esq. of CCI Consulting to address the grievances filed by Mr. Trotter and Ms. Johnsten.

68.    ULS also engaged Ms. Merrick to address other complaints of race discrimination that had been raised by students and other ULS staff members.

69.    Mr. Trotter met with Ms. Merrick on May 7, 2018 and May 21, 2018 and discussed racism and ageism at ULS and the retaliation he had suffered.

70.    Ms. Johnsten met with Ms. Merrick on May 7, 2018 and May 15, 2018 and discussed racism at ULS and the retaliation she had suffered.

71.    On May 11, 2018, Acting President Dunlop gave Mr. Trotter a letter which falsely accused him of poor work performance.

72.    Acting President Dunlop's May 11, 2018 letter referenced several alleged events that were months old and pre-dated Mr. Trotter's complaints of discrimination and retaliation.

73.    Despite Mr. Campanella's findings, Acting President Dunlop referenced Dr. Zimmann's unfounded grievance within his May 11, 2018 letter and suggested that Mr. Trotter had created a hostile work environment.

74. Acting President Dunlop's May 11, 2018 letter closed by threatening the termination of Mr. Trotter's employment – "Accordingly, please be advised that any further inappropriate and unprofessional conduct will result in disciplinary action, up to and including termination."

75. On May 16, 2018, Mr. Trotter submitted a supplemental grievance, which responded in detail to the false statements in Acting President Dunlop's May 11, 2018 letter and opposed the additional retaliatory conduct that he had suffered.

76. On May 16, 2018, the ULS Board named Dr. Richard Green as Interim President.

77. On or about May 18, 2018, Acting President Dunlop announced that the ULS Board had established a permanent diversity committee to address long-standing issues of racism at ULS and that the Board would begin diversity training in September of 2018.

78. Interim President Green started to work for ULS on June 1, 2018.

79. Acting President Dunlop returned to serve on the ULS Board.

80. Significantly, Interim President Green had not been previously associated with or employed by ULS.

81. Interim President Green moved to Pennsylvania from Tucson, Arizona.

82. Interim President Green spent the first one hundred days of his interim presidency meeting with employees and students, visiting both campuses, and learning about ULS.

83. On June 13, 2018, Mr. Trotter submitted to Interim President Green a memorandum outlining several proposed strategic initiatives, which, in part, raised concerns regarding racism at ULS.

84. Mr. Trotter met with Interim President Green on July 18, 2018 to discuss his role as COO as part of a leadership evaluation.

10

85.     During the July 18, 2018 meeting, Mr. Trotter discussed the grievances that he had previously filed and shared Acting President Dunlop's May 11, 2018 letter with Interim President Green.

86.     On or about July 30, 2018, new Board Chairman Rev. Dr. Peter Boehringer ("Chairman Boehringer") forwarded a letter to Mr. Trotter advising him that his prior complaints of retaliation for opposing racism and ageism at ULS were unsubstantiated.

87.     On or about July 30, 2018, Chairman Boehringer forwarded a letter to Ms. Johnsten advising her that her prior complaints of retaliation for opposing racism at ULS were unsubstantiated.

88.     Both letters from Chairman Boehringer were placed on the desks of Mr. Trotter and Ms. Johnsten while they were on vacation and Chairman Boehringer, Interim President Green and ULS held no discussions with them concerning the investigation of their grievances.

89.     During an August 29, 2018 meeting, Interim President Green inappropriately responded "Fuck, what the fuck?" to one of Mr. Trotter's work-related questions.

90.     During the President's Cabinet meetings with Interim President Green that took place on September 5, 2018 and September 12, 2018, Mr. Trotter raised concerns about systemic and other racism at ULS.

91.     Interim President Green denied that there was any systemic racism at ULS and insisted that any racism was merely the actions of individual actors.

92.     In September 2018, Interim President Green announced on more than one occasion that that there would be no changes in the makeup of ULS's administration.

93.     On September 25, 2018, Interim President Green thanked Acting President Dunlop in writing for providing information to him in connection with

the transition of the presidency, including "binders filled with information and documents".

94.    Interim President Green also acknowledged in writing on September 25, 2018 that ULS was about to issue a statement about "diversity and anti-racism issues, as well as general discrimination concerns at the seminary", in connection with efforts undertaken prior to his June 1, 2018 arrival.

95.    Interim President Green also acknowledged in writing on September 25, 2018 that CCI's investigation into discriminatory practices at ULS had just been completed.

96.    On September 26, 2018, Interim President Green presented an organization chart to the ULS Board, which included Mr. Trotter and Ms. Johnsten and listed their respective positions.

97.    On October 2, 2018, the ULS Board acknowledged in writing that ULS staff and others had raised concerns regarding racism at ULS.

98.    On October 2, 2018, the ULS Board acknowledged that CCI had just completed its investigation regarding claims of racism at ULS.

99.    On October 2, 2018, the ULS Board acknowledged in writing "It must be publicly stated that during the transition period, former employees of ULS made comments or acted in ways that were either perceived as racist, or in fact were racist."

100.   On October 2, 2018, the ULS Board acknowledged in writing that ULS had delayed in addressing concerns raised about discrimination.

101.   On October 3, 2018, Interim President Green presented an updated organization chart at the President's Cabinet meeting, which once again included Mr. Trotter and Ms. Johnsten and listed their respective positions.

102.   On October 8, 2018, without any prior notice, Interim President Green terminated Mr. Trotter's ULS employment.

103. On October 8, 2018, without any prior notice, Interim President Green also terminated Ms. Johnsten's ULS employment.

104. Interim President Green claimed that Mr. Trotter and Ms. Johnsten were being let go as part of a reorganization.

105. The manner in which ULS terminated the employment of Mr. Trotter and Ms. Johnsten led the ULS community to wrongly believe that they had engaged in improper and/or illegal behavior.

106. On October 11, 2018, ULS unilaterally forwarded proposed settlement agreements to Mr. Trotter and Ms. Johnsten, which included releases of all claims against ULS, Interim President Green, Acting President Dunlop and others.

107. The Older Workers Benefit Protection Act ("OWBPA") notices attached to the proposed settlement agreements were deficient insofar as they did not provide a description of the eligibility factors used to determine impacted positions in connection with the alleged reduction in force.

108. On October 15, 2018, just one week after the termination of plaintiffs' employment, Acting President Dunlop resigned from the ULS Board.

109. Acting President Dunlop's resignation letter stated, in part: "As with all transitions, people in leadership positions can become a lightning rod for issues and changes that were necessary. It may be wise for them to step aside when it is appropriate to allow new leadership to continue the work without the labels of the past. It is time for me to take that step."

110. On October 19, 2018, which was eleven days after the termination of Mr. Trotter's and Ms. Johnsten's employment, Interim President Green addressed their discharge for the first time in writing – "Our hope, through this current restructuring process, is to move towards an organizational structure that aligns with our strengths, while also taking into consideration current financial realities."

111. Interim President Green also wrote the following on October 19, 2018: "Organizational Changes.  Mr. Dennis Trotter, COO, and Pastor Trina Johnsten, V.P. for Student Services and Enrollment, are no longer serving in their previous capacities.  Going forward, any administrative issues should be directed to Mr. Scott Ganley, CFO, and any questions related to operations should be directed to Mr. Kyle Barger.  For now, questions related to student affairs should be directed to Dean Sebastion.  We plan to make an offer to a new Director of Student Services in the near future, who will handle questions related to student affairs and will report to the Dean."

112. However, upon information and belief, Interim President Green privately told ULS staff members that other factors led to the decision to terminate the employment of Mr. Trotter and Ms. Johnsten and that ULS's finances played no part in that decision.

113. At no point did ULS offer the referenced new position of Director of Student Services to Ms. Johnsten.

114. ULS terminated Mr. Trotter's employment in retaliation for his engagement in the various protected activities listed above.

115. ULS terminated Ms. Johnsten's employment in retaliation for Mr. Trotter's engagement in the various protected activities and for her engagement in the various protected activities, which are both listed above.

116. ULS's termination of Mr. Trotter's and Ms. Johnsten's employment is suspect for the following reasons:

- ULS terminated the employment of Mr. Trotter without advance notice to him or the community.
- Mr. Trotter's work performance was exemplary.
- Mr. Trotter received no written documentation in connection with his dismissal.
- ULS terminated the employment of Ms. Johnsten without advance notice to her or the community.
- Ms. Johnsten's work performance was exemplary.
- Ms. Johnsten received no written documentation in connection with her dismissal.

14

- ULS gave no advance warning of the need for any layoffs or a reduction in force.
- Interim President Green repeatedly announced in the weeks prior to the termination of their employment that there would be no administrative employment changes.
- Mr. Trotter and Ms. Johnsten were the only two ULS employees let go as part of the alleged reduction in force.
- The reason given for the termination of their employment was pretextual.
- ULS did not terminate the employment of lesser qualified and lesser tenured employees that had not engaged in protected activity.
- Their selection for the alleged reduction in force was flawed to the extent that ULS did not adequately describe the eligibility factors utilized to select impacted positions.
- The termination of their employment came less than one week after the ULS Board acknowledged that ULS employees had engaged in racist activities.
- The termination of their employment took place less than a week before Acting President Dunlop resigned from the ULS Board.

117.  ULS's purported reasons for the termination of their employment is weak and incapable of belief.

118.  Lesser qualified and lesser tenured employees that had not engaged in protected activities assumed Mr. Trotter's former job responsibilities and Ms. Johnsten's former job responsibilities.

119.  At or around the time that ULS terminated their employment, there were several job openings and new hires, including, but not limited to, the Director of Student Services position referenced above.

120.  ULS did not give Mr. Trotter or Ms. Johnsten an opportunity to transfer or be considered for other job opportunities within ULS.

121.  ULS has refused to reinstate or rehire Mr. Trotter.

122.  ULS has refused to reinstate or rehire Ms. Johnsten.

*ULS receives plaintiffs' Administrative Complaints*

123. ULS was served with a copy of the November 7, 2018 Administrative Complaints of Mr. Trotter and Ms. Johnsten on or about November 9, 2018.

124. Upon information and belief, Interim President Green also contemporaneously received a copy of the November 7, 2018 Administrative Complaints of Mr. Trotter and Ms. Johnsten.

*ULS ignores Ms. Johnsten's applications for open job positions*

125. On December 24, 2018, Ms. Johnsten submitted a complete application for employment to ULS for an advertised open position of Director of Student Services.

126. Ms. Johnsten was qualified for the Director of Student Services position.

127. ULS ignored Ms. Johnsten's job application for the Director of Student Services position despite the fact that its website stated that "review of applications will begin immediately".

128. On January 10, 2019, Ms. Johnsten sent a follow-up email to ULS to inquire about the status of her application for the position of Director of Student Services.

129. Shortly after Ms. Johnsten sent her January 10, 2019 follow-up email, ULS removed the Director of Student Services job posting from its website.

130. Upon information and belief, ULS discontinued its search efforts to fill the Director of Student Services position to avoid having to hire Ms. Johnsten to fill that role.

131. In early January 2018, ULS announced on its website that it was seeking to fill a Director of Admissions position.

132. ULS designated the Director of Admissions position as "Internal Applicants Only".

133. Upon information and belief, ULS designated the Director of Admissions position as "Internal Applicants Only", in hopes of deterring Ms. Johnsten from applying for the position.

134. Ms. Johnsten was qualified for the Director of Admissions position.

135. On January 15, 2019, Ms. Johnsten submitted a complete application for employment to ULS for the Director of Admissions position.

136. ULS refused to consider Ms. Johnsten's job applications for the positions of Director of Student Services and Director of Admissions in retaliation for her engagement in the various protected activities listed above.

137. ULS refused to consider Ms. Johnsten's job applications for the positions of Director of Student Services and Director of Admissions in retaliation for Mr. Trotter's engagement in the various protected activities listed above.

138. The retaliatory actions taken against plaintiffs after they raised concerns about discriminatory conduct would have discouraged a reasonable employee from complaining about discrimination.

139. ULS did not have and enforce an effective policy against retaliation, did not promptly or effectively investigate plaintiffs' claims of retaliation, and did not take prompt or effective corrective action.

140. Mr. Dunlop and Dr. Green failed to take action in response to the complaints of Mr. Trotter and Ms. Johnsten.

141. As a direct and proximate result of the wrongful conduct of defendants, plaintiffs have in the past incurred, and will in the future incur, a loss of earnings capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

**COUNT I**

**TITLE VII – RETALIATION & HOSTILE WORK ENVIROMENT**

**PLAINTIFFS v. ULS**

142.   Plaintiffs incorporate by reference paragraphs 1 through 141 above as though fully set forth herein.

143.   Title VII prohibits retaliation against employees who oppose practices made unlawful by Title VII, make charges, or assist or participate in any Title VII investigations or proceedings.

144.   In response to plaintiffs' protected activities, ULS has retaliated against plaintiffs in at least the following ways:

- Subjected Mr. Trotter to a hostile work environment;
- Terminated plaintiffs' ULS employment; and
- Refused to consider Ms. Johnsten's applications for the positions of Director of Student Services and Direct of Admissions.

145.   On information and belief, ULS's retaliation against plaintiffs was willful and intentional.

146.   On information and belief, ULS engaged in retaliatory conduct with malice and/or reckless indifference to plaintiffs' civil rights protected by federal law.

147.   ULS failed to discharge, suspend, reprimand, or otherwise discipline Interim President Dunlop and Acting President Green for their retaliatory conduct.

148.   As a direct and proximate result of ULS's retaliatory violations of Title VII (42 U.S.C. § 2000e-3), plaintiffs have suffered and will continue to suffer loss of income, pension and fringe benefits, bonuses, retirement and welfare benefits provided by ULS to its employees, physical pain and suffering, personal humiliation, embarrassment, disruption of their personal and professional life, and loss of enjoyment of the ordinary pleasures of everyday

18

life.

149.  To remedy the violations of the rights of plaintiffs secured by Title VII, plaintiffs request that the Court award them the relief prayed for below.

## COUNT II
### SECTION 1981 – RETALIATION & HOSTILE WORK ENVIRONMENT
### PLAINTIFFS v. ALL DEFENDANTS

150.  Plaintiffs incorporate by reference paragraphs 1 through 149 above as though fully set forth herein.

151.  Section 1981 prohibits retaliation against employees who complain about race discrimination.

152.  In response to plaintiffs' protected activities, defendants have retaliated against plaintiffs in at least the following ways:

- Subjected Mr. Trotter to a hostile work environment;
- ULS and Interim President Green terminated plaintiffs' ULS employment; and
- ULS and Interim President Green refused to consider Ms. Johnsten's applications for the positions of Director of Student Services and Direct of Admissions.

153.  On information and belief, defendants' retaliation against plaintiffs was willful and intentional.

154.  On information and belief, defendants engaged in retaliatory conduct with malice and/or reckless indifference to plaintiff's civil rights protected by federal law.

155.  ULS failed to discharge, suspend, reprimand, or otherwise discipline Interim President Green and Acting President Dunlop for their retaliatory conduct.

156.  As a direct and proximate result of defendants' retaliatory

19

violations of Section 1981 (42 U.S.C. § 1981), plaintiffs have suffered and will continue to suffer loss of income, pension and fringe benefits, bonuses, retirement and welfare benefits provided by ULS to its employees, physical pain and suffering, personal humiliation, embarrassment, disruption of their personal and professional life, and loss of enjoyment of the ordinary pleasures of everyday life.

157. To remedy the violations of the rights of plaintiffs secured by Section 1981, plaintiffs request that the Court award them the relief prayed for below.

**COUNT III**

**ADEA – RETALIATION & HOSTILE WORK ENVIRONMENT**
**PLAINTIFFS v. ULS**

158. Plaintiffs incorporate by reference paragraphs 1 through 157 above as though fully set forth herein.

159. The ADEA prohibits retaliation against employees who oppose practices made unlawful by the ADEA, make charges, or assist or participate in any ADEA investigation or proceeding.

160. In response to plaintiffs' protected activities under the ADEA, ULS has retaliated against plaintiffs in at least the following ways:

- Subjected Mr. Trotter to a hostile work environment;
- Terminated plaintiffs' ULS employment; and
- Refused to consider Ms. Johnsten's applications for the positions of Director of Student Services and Direct of Admissions.

161. On information and belief, ULS's retaliation against plaintiffs was willful and intentional.

162. On information and belief, ULS engaged in retaliatory conduct with malice and/or reckless indifference to plaintiffs' civil rights protected by federal

law.

163. ULS failed to discharge, suspend, reprimand, or otherwise discipline Interim President Dunlop and Acting President Green for their retaliatory conduct.

164. As a direct and proximate result of ULS's retaliatory violations of the ADEA (29 U.S.C. § 623(d)), plaintiffs have suffered and will continue to suffer loss of income, pension and fringe benefits, bonuses, retirement and welfare benefits provided by ULS to its employees, physical pain and suffering, personal humiliation, embarrassment, disruption of their personal and professional life, and loss of enjoyment of the ordinary pleasures of everyday life.

165. To remedy the violations of the rights of plaintiffs secured by the ADEA, plaintiffs request that the Court award them the relief prayed for below.

## COUNT IV
## PHRA – RETALIATION & HOSTILE WORK ENVIRONMENT
## PLAINTIFFS v. ALL DEFENDANTS

166. Plaintiffs incorporate by reference paragraphs 1 through 165 above as though fully set forth herein.

167. The PHRA prohibits retaliation against employees who oppose practices made unlawful by the PHRA, make charges, or assist or participate in any PHRA investigation or proceeding.

168. In response to plaintiffs' protected activities, defendants have retaliated against plaintiffs in at least the following ways:

- Subjected Mr. Trotter to a hostile work environment; and
- ULS and Interim President Green terminated plaintiffs' ULS employment.
- ULS and Interim President Green refused to consider Ms.

Johnsten's applications for the positions of Director of Student Services and Direct of Admissions.

169. On information and belief, defendants' retaliation against plaintiff was willful and intentional.

170. On information and belief, defendants engaged in retaliatory conduct with malice and/or reckless indifference to plaintiff's civil rights protected by the PHRA.

171. ULS failed to discharge, suspend, reprimand, or otherwise discipline Interim President Green and Acting President Dunlop for their retaliatory conduct.

172. Acting President Dunlop and Interim President Green aided and abetted ULS's retaliatory conduct and retaliated against Mr. Trotter and Ms. Johnsten.

173. As a direct and proximate result of defendants' retaliatory violations of the PHRA (43 P.S. § 955(d)), plaintiffs have suffered and will continue to suffer loss of income, pension and fringe benefits, bonuses, retirement and welfare benefits provided by ULS to its employees, physical pain and suffering, personal humiliation, embarrassment, disruption of his personal and professional life, and loss of enjoyment of the ordinary pleasures of everyday life.

174. To remedy the violations of the rights of plaintiffs secured by the PHRA, plaintiffs request that the Court award them the relief prayed for below

## COUNT V
### PFPO – RETALIATION & HOSTILE WORK ENVIRONMENT
### PLAINTIFF v. ALL DEFENDANTS

175. Plaintiffs incorporate by reference paragraphs 1 through 174 above as though fully set forth herein.

176. The PFPO prohibits retaliation against employees who oppose practices made unlawful by the PFPO, make charges, or assist or participate in any PFPO investigation or proceeding.

177. In response to Plaintiffs' protected activities under the PFPO, defendants have retaliated against plaintiffs in at least the following ways:

- Subjected Mr. Trotter to a hostile work environment;
- ULS and Interim President Green terminated plaintiffs' ULS employment; and
- ULS and Interim President Green refused to consider Ms. Johnsten's applications for the positions of Director of Student Services and Direct of Admissions

178. On information and belief, defendants' retaliation against plaintiffs was willful and intentional

179. On information and belief, defendants engaged in retaliatory conduct with malice and/or reckless indifference to plaintiffs' rights protected by the PFPO.

180. ULS failed to discharge, suspend, reprimand, or otherwise discipline Acting President Dunlop or Interim President Green for their retaliatory conduct.

181. Acting President Dunlop and Interim President Green aided and abetted ULS's retaliatory conduct and retaliated against Mr. Trotter and Ms. Johnsten

182. As a direct and proximate result of defendants' retaliatory violations of the PFPO (§ 9-1103), plaintiffs have suffered and will continue to suffer loss of income, pension and fringe benefits, bonuses, retirement and welfare benefits provided by ULS to its employees, physical pain and suffering, personal humiliation, embarrassment, disruption of his personal and professional life, and loss of enjoyment of the ordinary pleasures of everyday life.

**RELIEF**

**WHEREFORE**, plaintiffs seek damages and legal and equitable relief in connection with defendants' improper conduct, and specifically pray that the Court grant the following relief to the plaintiffs by:

(a) declaring the acts and practices complained of herein to be in violation of Title VII;

(b) declaring the acts and practices complained of herein to be in violation of Section 1981;

(c) declaring the acts and practices complained of herein to be in violation of the ADEA;

(d) declaring the acts and practices complained of herein to be in violation of the PHRA;

(e) declaring the acts and practices complained of herein to be in violation of the PFPO;

(f) enjoining and permanently restraining the violations complained of herein;

(g) entering judgment against the defendants and in favor of the plaintiffs in amounts to be determined;

(h) awarding compensatory damages to make the plaintiffs whole for all lost earning, earning capacity and benefits, past and future, which plaintiffs have suffered or will suffer as a result of defendants' improper conduct;

(i) awarding plaintiffs reinstatement or, in lieu thereof, front pay;

(j) awarding compensatory damages to plaintiffs for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of enjoyment of the ordinary pleasures of everyday life, which plaintiffs have suffered or will suffer as a result of defendants' improper conduct;

(k) awarding punitive damages to plaintiffs under Title VII, Section 1981 and the PFPO;

(l) awarding liquidated damages to plaintiffs under the ADEA;

(m) awarding plaintiffs such other damages as are appropriate under Title VII, Section 1981, the ADEA, the PHRA and the PFPO;

(n) awarding plaintiffs the costs of suit, expert fees and other disbursements, and pre- and post-judgment interest, and reasonable counsel fees; and

(o) granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

Freemann Law Offices
A Professional Corporation

By: Scott Bennett Freemann, Esq.
Attorney ID No. 82030
3101 W. Glenwood Ave., Suite G103
Philadelphia, PA 19121
(215) 564-7400 (Telephone)
(215) 564-7406 (Facsimile)

Attorneys for Plaintiffs

Dated:   February 3, 2020

# EXHIBIT "1"

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | |

| Pennsylvania Human Relations Commission and Philadelphia Commission on Human Relations | and EEOC |
|---|---|
| _State or local Agency, if any_ | |

| Name _(indicate Mr., Ms., Mrs.)_ | Home Phone _(Incl. Area Code)_ | Date of Birth |
|---|---|---|
| **Mr. Dennis Trotter** | (402) 984-4313 | 4/29/61 |

| Street Address | City, State and ZIP Code | | |
|---|---|---|---|
| **281 Hermitage Street, Philadelphia, PA 19127** | | | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. _(If more than two, list under PARTICULARS below.)_

| Name | No. Employees, Members | Phone No. _(Include Area Code)_ |
|---|---|---|
| **United Lutheran Seminary** | >20 | (717) 338-3000 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| **7301 Germantown Avenue, Philadelphia, PA 19119** | | |

| Name | No. Employees, Members | Phone No. _(Include Area Code)_ |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON _(Check appropriate box(es).)_

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER _(Specify)_

DATE(S) DISCRIMINATION TOOK PLACE
Earliest                    Latest
10/8/18

☒ CONTINUING ACTION

THE PARTICULARS ARE _(If additional paper is needed, attach extra sheet(s)):_

Please see the attached complaint, which is to be dual filed with the Pennsylvania Human Relation Commission.

| ☒ I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – _When necessary for State and Local Agency Requirements_ |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 11/7/18 _____ _Date_        _Charging Party Signature_ | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE _(month, day, year)_ |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | |

| Pennsylvania Human Relations Commission and<br>Philadelphia Commission on Human Relations | and EEOC |
|---|---|

*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Christina Johnsten | (402) 984-4306 | 3/23/67 |

| Street Address | City, State and ZIP Code |
|---|---|
| 281 Hermitage Street, Philadelphia, PA 19127 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| United Lutheran Seminary | >20 | (717) 338-3000 |

| Street Address | City, State and ZIP Code |
|---|---|
| 7301 Germantown Avenue, Philadelphia, PA 19119 | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN<br>☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION<br>☐ OTHER (Specify) | Earliest          Latest<br>10/8/18<br>☒ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

Please see the attached complaint, which is to be dual filed with the Pennsylvania Human Relation Commission.

| X  I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| <br>**11/7/18**          *[signature]*<br>Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year) |

Equal Employment Opportunity Commission
Philadelphia District Office

| | | |
|---|---|---|
| Dennis Trotter | : | |
| | : | |
| **and** | : | |
| | : | |
| Christina Johnsten, | : | |
| Complainants, | : | EEOC Case No. _____ |
| | : | |
| v. | : | |
| | : | |
| United Lutheran Seminary, | : | |
| Respondent. | : | |

## COMPLAINT

1.    Respondent United Lutheran Seminary ("ULS") improperly subjected Mr. Dennis Trotter ("Mr. Trotter") to a retaliatory hostile work environment and retaliated against Mr. Trotter and Christina Johnsten ("Ms. Johnsten") in violation of Title VII of the Civil Rights Acts of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* ("ADEA"), as set forth herein.[1]

## PARTIES

2. The complainants herein are:

> Mr. Dennis Trotter
> Ms. Christina Johnsten
> 281A Hermitage Street
> Philadelphia, PA 19127

---

[1] ULS's conduct also violates the Pennsylvania Human Relation Act, as amended, 43 P.S. § 951. *et seq..* ("PHRA") and the Philadelphia Fair Practices Ordinance, as amended. § 9-1100, *et seq.*, ("PFPO"). and James Dunlop ("Acting President Dunlop") and Dr. Richard Green ("Interim President Green") have aided and abetted ULS's retaliatory conduct and retaliated against Mr. Trotter and Ms. Johnsten in violation of the PHRA and the PFPO. This complaint is being dual filed with the Pennsylvania Human Relations Commission ("PHRC").

3. The respondent herein is:

   United Lutheran Seminary
   7301 Germantown Avenue
   Philadelphia, PA  19127

4.   Mr. Trotter and Ms. Johnsten are married to one another.

## UNDERLYING FACTS

### *Respondent United Lutheran Seminary*

5. ULS is a graduate professional school that provides theological educational services.

6. ULS was formed on July 1, 2017, via a consolidation of two Lutheran seminaries: Lutheran Theological Seminary at Philadelphia ("LTSP") and Lutheran Theological Seminary at Gettysburg ("LTSG").

7. ULS employs well over fifty full-time employees.

### *ULS employment*

8. Prior to the consolidation, Mr. Trotter was first employed by LTSP in 2015 as its Vice President for Advancement.  Mr. Trotter's resume is attached as Exhibit "A".

9. Prior to the consolidation, Ms. Johnsten was first employed by LTSP in 2015 as its Vice President for Student Vocation and Formation.  Ms. Johnsten's resume is attached as Exhibit "B".

10.    In connection with the consolidation of LTSP and LTSG, Mr. Trotter was promoted to the position of Senior Vice President for Advancement for ULS.

11.    In connection with the consolidation of LTSP and LTSG, Ms. Johnsten was promoted to the position of Vice President of Student Services and Enrollment.  The job description for the Vice President of Student Services and Enrollment position is attached as Exhibit "C".

12.    On November 1, 2017, Mr. Trotter was promoted to the position of Chief Operating Officer ("COO").  The job description for the COO position is attached as Exhibit "D".

13.    Mr. Trotter's annual salary as COO was $125,000 and he received valuable benefits, including, but not limited to, health insurance and retirement contributions equal to ten percent of his annual salary.

14.    Ms. Johnsten's annual salary as Vice President of Student Services and Enrollment was $80,000 and she received valuable benefits, including, but not limited to, health insurance and retirement contributions equal to ten percent of her annual salary.

*Protected Activities and Resulting Retaliation*

15. On March 14, 2018, ULS removed its first President, Dr. Theresa F. Latini, and James Dunlop became the Acting President of ULS.

16. Prior to becoming Acting President, James Dunlop had served on the ULS Board and was member of the Board's Executive Committee.

17. On March 16, 2018, Mr. Trotter met with Acting President Dunlop to discuss the status of operations under his oversight as COO. The briefing points that Mr. Trotter used at the March 16, 2018 meeting are attached as Exhibit "E".

18. During the March 16, 2018 meeting with Acting President Dunlop, Mr. Trotter raised concerns regarding several race and age based discriminatory events at ULS, including, but not limited to, Acting President Dunlop's prior reference to the termination of President Latini's employment as a "lynching".

19. During the March 16, 2018 meeting with Acting President Dunlop, Mr. Trotter requested that ULS investigate these discriminatory events.

20. On March 17, 2018, Mr. Trotter sent a follow-up email to Acting President Dunlop, which, in part, reiterated his concerns regarding acts of racism and ageism at ULS and asked Acting President Dunlop to initiate an investigation. *See* Exhibit "F".

21.   Shortly after the March 16, 2018 meeting and the submission of his March 17, 2018 email, ULS subjected Mr. Trotter to a sustained campaign of antagonism and a retaliatory hostile work environment.

22.   Following the March 16, 2018 meeting and the submission of his March 17, 2018 email, Acting President Dunlop's demeanor towards Mr. Trotter changed.

23.   On March 27, 2018, without any advance warning and just ten minutes before the start of the Philadelphia Advancement Team meeting, Acting President Dunlop told Mr. Trotter that he would no longer have responsibility for advancement related job responsibilities, including, but not limited to, all church and alumni relations job responsibilities, and that such responsibilities had been assigned to Dr. Angela Zimmann ("Dr. Zimmann"), a junior employee with next to no experience within those areas.

24.   On March 27, 2018, Acting President Dunlop also told Mr. Trotter that he would not be permitted to participate in the Philadelphia Advancement Team staff meeting taking place that day, although the attending staff members reported directly to Mr. Trotter.

25.   Upon information and belief, at the March 27, 2018 meeting with the Philadelphia Advancement Team, Acting President

5

Dunlop stated "we are not going back to Egypt to eat watermelon" in reference to both the claims of racism related to a letter written by the Gettysburg Advancement staff and a proposed meeting with African-American students scheduled to take place later than afternoon.

26.   On March 27, 2018, Acting President Dunlop told Mr. Trotter in a second meeting that he was not opposed to the idea of Mr. Trotter no longer working at ULS and asked, "What that would look like?"

27.   On April 2, 2018, Mr. Trotter was asked to submit to an interview on April 6, 2018 in connection with a grievance filed by Dr. Zimmann that falsely claimed that Mr. Trotter had created an unsafe and hostile work environment.

28.   Upon information and belief, Acting President Dunlop immediately engaged an outside consultant, John Campanella of the Lyons Company, to investigate Ms. Zimmann's grievance.

29.   On April 4, 2018, Mr. Trotter submitted a grievance to ULS, which reiterated his concerns regarding various race and age based discriminatory practices at ULS and memorialized the retaliation he had suffered.  *See* Exhibit "G".

30.   Mr. Trotter's April 4, 2018 grievance once again asked ULS to initiate an investigation into discriminatory practices at ULS and to cease retaliating against him.  *Id.*

6

31.   On April 6, 2018, Mr. Trotter met with Mr. Campanella in connection with the investigation of Dr. Zimmann's grievance.

32.   On or about April 9, 2018, Mr. Campanella forwarded a letter to Acting President Dunlop, which confirmed that Mr. Trotter had not created a hostile work environment or engaged in any unlawful behavior.  *See* Exhibit "H".

33.   Despite multiple requests, Acting President Dunlop refused to give Mr. Trotter a copy of Mr. Campanella's April 9, 2018 determination or confirm the results of that investigation in writing.

34.   In April 2018, Acting President Dunlop excluded Mr. Trotter from participating in the hiring of a major gift officer for ULS.

35.   On April 13, 2018, Ms. Johnsten submitted a grievance, which detailed, among other things, the retaliation she had suffered for objecting to racism at ULS.[2]  *See* Exhibit "I".

36.   ULS and Acting President Dunlop refused to timely address either grievance.

37.   On April 13, 2018, Acting President Dunlop apologized in writing for his past inappropriate actions by stating: "On a personal note, I have been called to task for some of my own comments and use of particular terms that have caused pain

---

[2] Ms. Johnsten's grievance also raised concerns with ULS's failure to comply with state and federal regulations with respect to admissions and financial aid operations and the use of restricted donor funds at the Gettysburg campus.

for people.  I sincerely apologize for those things that I have said or left unsaid."  *See* Exhibit "J", at p. 4.

38.    On April 20, 2018, Mr. Trotter once again asked ULS to investigate his grievance.  *See* Exhibit "K".

39.    On April 20, 2018, Mr. Trotter also asked for a copy of Mr. Campanella's findings regarding Dr. Zimmann's unfounded grievance.  *Id.*

40.    On about April 20, 2018, Acting President Dunlop appointed himself and five other individuals to serve on an interview team to find and select his replacement.  *See* Exhibit "L", at pp. 1-2.

41.    Acting President Dunlop did not ask Mr. Trotter to join the interview team as would be normative for an organization's COO.

42.    However, Acting President Dunlop asked Dr. Zimmann to serve on the interview team.

43.    On May 2, 2018, ULS finally engaged Andrea Merrick, Esq. of CCI Consulting to address the grievances filed by Mr. Trotter and Ms. Johnsten.

44.    ULS also engaged Ms. Merrick to address other complaints of race discrimination that had been raised by students and other staff.

45. Mr. Trotter met with Ms. Merrick on May 7, 2018 and May 21, 2018 and discussed racism and ageism at ULS and the retaliation he had suffered.

46. Ms. Johnsten met with Ms. Merrick on May 7, 2018 and May 15, 2018 and discussed racism at ULS and the retaliation she had suffered.

47. On May 11, 2018, Acting President Dunlop gave Mr. Trotter a letter which falsely accused him of poor work performance. *See* Exhibit "M".

48. Acting President Dunlop's May 11, 2018 letter referenced several alleged events that were months old and pre-dated Mr. Trotter's complaints of discrimination and retaliation. *Id.*

49. Despite Mr. Campanella's findings, Acting President Dunlop continued to reference Dr. Zimmann's false grievance within his May 11, 2018 letter and suggested that Mr. Trotter had created a hostile work environment. *Id.*

50. Acting President Dunlop's May 11, 2018 letter closed by threatening the termination of Mr. Trotter's employment – "Accordingly, please be advised that any further inappropriate and unprofessional conduct will result in disciplinary action, up to and including termination." *Id.*

51. On May 16, 2018, Mr. Trotter submitted a supplemental grievance, which responded in detail to the false statements in

9

Acting President Dunlop's May 11, 2018 letter and opposed the additional retaliatory conduct that he had suffered. *See* Exhibit "N".

52. On May 16, 2018, the ULS Board named Dr. Richard Green as Interim President. *See* Exhibit "O", at p. 1.

53. On or about May 18, 2018, Acting President Dunlop announced that the ULS Board had established a permanent diversity committee to address long-standing issues of racism at ULS and that the Board would begin diversity training in September of 2018.[3] *Id.*, at p. 2.

54. Interim President Green started to work for ULS on June 1, 2018. *Id.*, at p. 1.

55. Acting President Dunlop returned to serve on the ULS Board.

56. Significantly, Interim President Green had not been previously associated with or employed by ULS.

57. Interim President Green moved to Pennsylvania from Tucson, Arizona.

58. Interim President Green spent the first one hundred days of his presidency meeting with employees and students, visiting both campuses, and learning about ULS.

59. On June 13, 2018, Mr. Trotter submitted to Interim President Green a memorandum outlining several proposed

---

[3] Diversity training for the Board has been subsequently rescheduled to first take place in January 2019.

strategic initiatives, which, in part, raised concerns regarding racism at ULS. *See* Exhibit "P".

60. Mr. Trotter met with Interim President Green on July 18, 2018 to discuss his role as COO as part of a leadership evaluation.

61. During the July 18, 2018 meeting, Mr. Trotter discussed the grievances that he had previously filed and shared Acting President Dunlop's May 11, 2018 letter with Interim President Green.

62. On or about July 30, 2018, new Board Chairman Rev. Dr. Peter Boehringer ("Chairman Boehringer") forwarded a letter to Mr. Trotter advising him that his prior complaints of retaliation for opposing racism and ageism at ULS were unsubstantiated. *See* Exhibit "Q".

63. On or about July 30, 2017, Chairman Boehringer forwarded a letter to Ms. Johnsten advising her that her prior complaints of retaliation for opposing racism at ULS were unsubstantiated. *See* Exhibit "R".

64. Both letters from Chairman Boehringer were placed on the desks of Mr. Trotter and Ms. Johnsten while they were on vacation and Interim President Green and ULS held no subsequent discussion with them concerning the investigation of their grievances.

65. During an August 29, 2018 meeting, Interim President Green inappropriately responded "Fuck, what the fuck?" to one of Mr. Trotter's work-related questions.

66. During the President's Cabinet meetings with Interim President Green that took place on September 5, 2018 and September 12, 2018, Mr. Trotter raised concerns about systemic and other racism at ULS.

67. Interim President Green denied that there was any systemic racism at ULS and insisted that any racism was merely the actions of individual actors.

68. In September 2018, Interim President Green announced on more than one occasion that that there would be no changes in the makeup of ULS's administration.

69. On September 25, 2018, Interim President Green thanked Acting President Dunlop in writing for providing information to him in connection with the transition of the presidency, including "binders filled with information and documents". *See* Exhibit "S", at p. 1.

70. Interim President Green also acknowledged in writing on September 25, 2018 that ULS was about to issue a statement about "diversity and anti-racism issues, as well as general discrimination concerns at the seminary", in connection with efforts undertaken prior to his June 1, 2018 arrival. *Id.*, at p. 2.

12

71.    Interim President Green also acknowledged in writing that CCI's investigation into discriminatory practices at ULS had just been completed. *Id.*, at p. 3.

72.    On September 26, 2018, Interim President Green presented an organization chart to the ULS Board, which included Mr. Trotter and Ms. Johnsten and listed their respective positions. *See* Exhibit "T".

73.    On October 2, 2018, the ULS Board acknowledged in writing that ULS staff and others had raised concerns regarding racism at ULS. *See* Exhibit "U", at p. 3.

74.    On October 2, 2018, the ULS Board acknowledged that CCI had just completed its investigation regarding claims of racism at ULS. *Id.*

75.    On October 2, 2018, the ULS Board acknowledged in writing **"It must be publicly stated that during the transition period, former employees of ULS made comments or acted in ways that were either perceived as racist, or in fact were racist."** *Id.* (emphasis added).

76.    On October 2, 2018, the ULS Board acknowledged in writing that ULS had delayed in addressing concerns raised about discrimination. *Id.*

77.    On October 3, 2018, Interim President Green presented an updated organization chart at the President's Cabinet meeting,

which once again included Mr. Trotter and Ms. Johnsten and listed their respective positions. *See* Exhibit "V".

78.   On October 8, 2018, without any prior notice, Interim President Green terminated Mr. Trotter's ULS employment.

79.   On October 8, 2018, without any prior notice, Interim President Green also terminated Ms. Johnsten's ULS employment.

80.   Interim President Green claimed that Mr. Trotter and Ms. Johnsten were being let go as part of a reorganization.

81.   The manner in which ULS terminated the employment of Mr. Trotter and Ms. Johnsten led the ULS community to wrongly believe that they had engaged in improper and/or illegal behavior.

82.   On October 11, 2018, ULS forwarded proposed settlement agreements to Mr. Trotter and Ms. Johnsten, which included releases of all claims against ULS, Interim President Green, Acting President Dunlop and others. *See* Exhibit "W".

83.   The Older Workers Benefit Protection Act ("OWBPA") notices attached to the proposed settlement agreements were deficient in that they did not provide a description of the eligibility factors used to determine impacted positions. *Id.*

84.    On October 15, 2018, just one week after the termination of their employment, Acting President Dunlop resigned from the ULS Board.  *See* Exhibit "X".

85.    Acting President Dunlop's resignation letter stated, in part: "As with all transitions, people in leadership positions can become a lightning rod for issues and changes that were necessary.  It may be wise for them to step aside when it is appropriate to allow new leadership to continue the work without the labels of the past.  It is time for me to take that step."  *Id.*

86.    On October 19, 2018, which was eleven days after the termination of Mr. Trotter's and Ms. Johnsten's employment, Interim President Green addressed their discharge for the first time in writing – "Our hope, through this current restructuring process, is to move towards an organizational structure that aligns with our strengths, while also taking into consideration current financial realities."  *See* Exhibit "Y", at p. 1.

87.    Interim President Green also wrote: "Organizational Changes.  Mr. Dennis Trotter, COO, and Pastor Trina Johnsten, V.P. for Student Services and Enrollment, are no longer serving in their previous capacities.  Going forward, any administrative issues should be directed to Mr. Scott Ganley, CFO, and any questions related to operations should be directed to Mr. Kyle

Barger.  For now, questions related to student affairs should be directed to Dean Sebastion.  We plan to make an offer to a new Director of Student Services in the near future, who will handle questions related to student affairs and will report to the Dean." *Id.*, at p. 2.

88.   However, upon information and belief, Interim President Green privately told ULS staff members that other factors led to the decision to terminate the employment of Mr. Trotter and Ms. Johnsten and that ULS's finances played no part in that decision.

89.   At no point did ULS offer the referenced new position of Director of Student Services to Ms. Johnsten.

90.   ULS terminated Mr. Trotter's employment in retaliation for his engagement in the various protected activities listed above.

91.   ULS terminated Ms. Johnsten's employment in retaliation for Mr. Trotter's engagement in the various protected activities and for her engagement in the various protected activities, which are both listed above.

92.   ULS's termination of Mr. Trotter's and Ms. Johnsten's employment is suspect for the following reasons:

- ULS terminated the employment of Mr. Trotter without advance notice to him or the community.
- Mr. Trotter's work performance was exemplary.
- Mr. Trotter received no written documentation in connection with his dismissal.

16

- ULS terminated the employment of Ms. Johnsten without advance notice to her or the community.
- Ms. Johnsten's work performance was exemplary.
- Ms. Johnsten received no written documentation in connection with her dismissal.
- ULS gave no advance warning of the need for any layoffs or a reduction in force.
- Interim President Green repeatedly announced in the weeks prior to the termination of their employment that there would be no administrative employment changes.
- Mr. Trotter and Ms. Johnsten were the only two ULS employees let go as part of this alleged reduction in force.
- The reason given for the termination of their employment was pretextual.
- ULS did not terminate the employment of lesser qualified and lesser tenured employees that had not engaged in protected activity.
- Their selection for the alleged reduction in force was flawed to the extent that ULS did not adequately describe the eligibility factors utilized to select impacted positions.
- The termination of their employment came less than one week after the ULS Board acknowledged that ULS employees had engaged in racist activities.
- The termination of their employment took place less than a week before Acting President Dunlop resigned from the ULS Board.

93.   ULS's purported reason for the termination of their employment is weak, flimsy and incapable of belief.

94.   ULS retained lesser qualified and lesser tenured employees that had not engaged in protected activities.

95.   Lesser qualified and lesser tenured employees that had not engaged in protected activities have assumed Mr. Trotter's former job responsibilities and Ms. Johnsten's former job responsibilities.

96.   At or around the time that ULS terminated their employment, there were several job openings and new hires, including, but not limited to, the Director of Student Services position referenced above.

97.   ULS did not give Mr. Trotter or Ms. Johnsten an opportunity to transfer or be considered for other job opportunities within ULS.

98.   ULS has refused to reinstate or rehire Mr. Trotter.

99.   ULS has refused to reinstate or rehire Ms. Johnsten.

100.   ULS has refused to return Mr. Trotter's and Ms. Johnsten's personal belongings.

101.   Acting President Dunlop and Interim President Green aided and abetted ULS's retaliatory conduct and retaliated against Mr. Trotter and Ms. Johnsten.

*Effects on Mr. Trotter and Ms. Johnsten*

102.   As a result of ULS's unlawful conduct, Mr. Trotter and Ms. Johnsten have suffered and continue to suffer significant emotional distress and pecuniary losses, including, but not limited to, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of reputation, loss of self-esteem, mental anguish and loss of life's everyday pleasures, and other nonpecuniary losses.

## COUNT ONE

## RETALIATION

## TITLE VII AND THE ADEA

## MR. TROTTER & MS. JOHNSTEN V. ULS

103.  The averments of this Charge are incorporated into this Count by reference, as if they were set out in full herein.

104.  Section 704(a) of Title VII provides: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees...because he has opposed any practice made an unlawful employment practice by this subchapter, or because he made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

105.  Section 623(d) of the ADEA provides: "It shall be unlawful for an employer to discriminate against any of his employees...because such individual...has opposed any practice made unlawful by this section, or because such individual...has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or litigation under this Act."

106.  The above-listed retaliatory conduct that ULS subjected Mr. Trotter to was because of his engagement in the protective activities listed above.

107.   The above-listed retaliatory conduct that ULS subjected Ms. Johnsten to was because of Mr. Trotter's engagement in the protective activities listed above.

108.   The above-listed retaliatory conduct that ULS subjected Ms. Johnsten to was because of her engagement in the protective activities listed above.

109.   ULS's actions were willful and taken with malice or reckless indifference to the rights of Mr. Trotter and Ms. Johnsten.

110.   ULS, by the above cited improper and unlawful actions, violated Title VII and the ADEA, which both make it illegal to retaliate against an employee for engaging in protected activities.[4]

## COUNT TWO

### RETALIATORY HOSTILE WORK ENVIRONMENT

### TITLE VII AND THE ADEA

### MR. TROTTER V. ULS

111.   The averments of this Charge are incorporated into this Count by reference, as if they were set out in full herein.

112.   Title VII and the ADEA both prohibit subjecting employees to a retaliatory hostile work environment.

---

[4] ULS, Acting President Dunlop and Interim President Green, by the above cited improper and unlawful actions, also violated the PHRA and the PFPO.

113. As discussed above, ULS subjected Mr. Trotter to a retaliatory hostile work environment.

114. ULS's actions were willful and taken with malice or reckless indifference to Mr. Trotter's rights

115. ULS, by the above cited improper and unlawful actions, violated Title VII and the ADEA, which both make it illegal to subject an employee to a hostile work environment in retaliation for engaging in protected activities.[5]

## DUAL FILING

116. This complaint is being dual filed with the PHRC.

---

[5] ULS, Acting President Dunlop and Interim President Green, by the above cited improper and unlawful actions, also violated the PHRA and the PFPO.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Trotter and Ms. Johnsten request that ULS be held liable for retaliation and retaliatory hostile work environment under Title VII and the ADEA, and that United Lutheran Seminary be required to provide Mr. Trotter and Ms. Johnsten with their lost wages, actual damages, incidental damages, reinstatement or front pay in lieu thereof, compensatory damages, punitive damages, liquidated damages, damages caused by emotional pain, suffering, inconvenience, mental anguish, loss of reputation, loss of enjoyment of life, and other nonpecuniary losses, and all other appropriate remedies under Title VII and the ADEA.[6]

---

[6] Mr. Trotter and Ms. Johnsten also pray that ULS, Acting President Dunlop and Interim President Green be required to provide all pertinent remedies under the PHRA and the PFPO.

## VERIFICATION

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information and belief.  I understand that false statements herein are made subject to the penalties of 18 Pa. C.S. § 4904, relating to unsworn falsification to authorities.

Date:  November 7, 2018

Dennis Trotter

**VERIFICATION**

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information and belief. I understand that false statements herein are made subject to the penalties of 18 Pa. C.S. § 4904, relating to unsworn falsification to authorities.


Date:  November 7, 2018

Christina Johnsten

## INFORMATION FOR COMPLAINANTS & ELECTION OPTION
## TO DUAL FILE WITH THE
## PENNSYLVANIA HUMAN RELATIONS COMMISSION

**Dennis Trotter and Christina Johnsten v. United Lutheran Seminary**

EEOC No.: _____

You have the right to file this charge of discrimination with the Pennsylvania Human Relations Commission (PHRC) under the Pennsylvania Human Relations Act. Filing your charge with PHRC protects your state rights, especially since there may be circumstances in which state and federal laws and procedures vary in a manner which would affect the outcome of your case.

Complaints filed with the PHRC must be filed within 180 days of the act(s) which you believe are unlawful discrimination. If PHRC determines that your PHRC complaint is untimely, it will be dismissed.

If you want your charge filed with the PHRC, including this form as part of your EEOC charge, with your signature under the verification below, will constitute filing with the PHRC. You have chosen EEOC to investigate your complaint, so PHRC will not investigate it and, in most cases, will accept EEOC's finding. If you disagree with PHRC's adoption of EEOC's finding, you will have the chance to file a request for preliminary hearing with PHRC.

Since you have chosen to file your charge first with EEOC, making it the primary investigatory agency, the Respondent will not be required to file an answer with PHRC, and no other action with PHRC is required by either party, unless/until otherwise notified by PHRC.

If your case is still pending with PHRC after one year from filing with PHRC, you have the right to file your complaint in state court. PHRC will inform you of these rights and obligations at that time.

**[Sign and date appropriate request below]**

____X____ I want my charge filed with PHRC. I hereby incorporate this form and the verification below into the attached EEOC complaint form and file it as my PHRC complaint. I request EEOC to transmit it to PHRC.

____X____ *I understand that false statements in this complaint are made subject to the penalties of 18 Pa. C.S. §4904, relating to unsworn falsification to authorities.*

X _____
Signature and Date

_____ I do not want my charge dual filed with PHRC.

X _____
Signature and Date

### INFORMATION FOR COMPLAINANTS & ELECTION OPTION
### TO DUAL FILE WITH THE
### PENNSYLVANIA HUMAN RELATIONS COMMISSION

### Dennis Trotter and Christina Johnsten v. United Lutheran Seminary

EEOC No.: _____

You have the right to file this charge of discrimination with the Pennsylvania Human Relations Commission (PHRC) under the Pennsylvania Human Relations Act. Filing your charge with PHRC protects your state rights, especially since there may be circumstances in which state and federal laws and procedures vary in a manner which would affect the outcome of your case.

Complaints filed with the PHRC must be filed within 180 days of the act(s) which you believe are unlawful discrimination. If PHRC determines that your PHRC complaint is untimely, it will be dismissed.

If you want your charge filed with the PHRC, including this form as part of your EEOC charge, with your signature under the verification below, will constitute filing with the PHRC. You have chosen EEOC to investigate your complaint, so PHRC will not investigate it and, in most cases, will accept EEOC's finding. If you disagree with PHRC's adoption of EEOC's finding, you will have the chance to file a request for preliminary hearing with PHRC.

Since you have chosen to file your charge first with EEOC, making it the primary investigatory agency, the Respondent will not be required to file an answer with PHRC, and no other action with PHRC is required by either party, unless/until otherwise notified by PHRC.

If your case is still pending with PHRC after one year from filing with PHRC, you have the right to file your complaint in state court. PHRC will inform you of these rights and obligations at that time.

### [Sign and date appropriate request below]

___X___ I want my charge filed with PHRC. I hereby incorporate this form and the verification below into the attached EEOC complaint form and file it as my PHRC complaint. I request EEOC to transmit it to PHRC.

___X___ *I understand that false statements in this complaint are made subject to the penalties of 18 Pa. C.S. §4904, relating to unsworn falsification to authorities.*

X _Christina Johnsten_  11-7-2018
Signature and Date

_____I do not want my charge dual filed with PHRC.

X_____
Signature and Date

# EXHIBIT "2"

EEOC Form 5 (11/09)

| SECOND CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act<br>Statement and other information before completing this form. | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| | ☐ FEPA<br>☒ EEOC | |

| Pennsylvania Human Relations Commission and<br>Philadelphia Commission on Human Relations | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Mr. Dennis Trotter** | **(402) 984-4313** | **4/29/61** |

| Street Address | City, State and ZIP Code |
|---|---|
| **281A Hermitage Street, Philadelphia, PA 19127** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **United Lutheran Seminary** | **>20** | **(717) 338-3000** |

| Street Address | City, State and ZIP Code |
|---|---|
| **7301 Germantown Avenue, Philadelphia, PA 19119** | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest          Latest

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

Please see the attached second charge of discrimination – complaint, which is to be dual filed with the Pennsylvania Human Relation Commission.

---

☒ I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

1/31/2019    X *[signature]* Dennis Trotter
Date         Charging Party Signature

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(month, day, year)

EEOC Form 5 (11/09)

| SECOND CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act<br>Statement and other information before completing this form. | Charge Presented To:<br>☐ FEPA<br>☒ EEOC | Agency(ies) Charge No(s): |
|---|---|---|

| Pennsylvania Human Relations Commission and<br>Philadelphia Commission on Human Relations | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.)<br>**Ms. Christina Johnsten** | Home Phone (Incl. Area Code)<br>**(402) 984-4306** | Date of Birth<br>**3/23/67** |
|---|---|---|

| Street Address<br>**281A Hermitage Street, Philadelphia, PA 19127** | City, State and ZIP Code |
|---|---|

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name<br>**United Lutheran Seminary** | No. Employees, Members<br>**>20** | Phone No. (Include Area Code)<br>**(717) 338-3000** |
|---|---|---|

| Street Address<br>**7301 Germantown Avenue, Philadelphia, PA 19119** | City, State and ZIP Code |
|---|---|

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|

| Street Address | City, State and ZIP Code |
|---|---|

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN
☒ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest                Latest

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

Please see the attached second charge of discrimination -- complaint, which is to be dual filed with the Pennsylvania Human Relation Commission.

| X   I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.<br><br>I declare under penalty of perjury that the above is true and correct. | NOTARY – When necessary for State and Local Agency Requirements<br><br>I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
|---|---|
| 1-31-2019        *Christine Johnston*<br>Date                Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year) |

**Equal Employment Opportunity Commission**
**Philadelphia District Office**

| | |
|---|---|
| Dennis Trotter | : |
| | : |
| and | : |
| | : |
| Christina Johnsten, | : |
|       Complainants, | :     EEOC Charge No. _____ |
| | : |
|     v. | : |
| | : |
| United Lutheran Seminary, | : |
|     Respondent. | : |

## SECOND CHARGE OF DISCRIMINATION – COMPLAINT

1.     Respondent United Lutheran Seminary ("ULS") improperly retaliated against Dennis Trotter ("Mr. Trotter") and Christina Johnsten ("Ms. Johnsten") in violation of Title VII of the Civil Rights Acts of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* ("ADEA"), as set forth herein.

### PARTIES

2.  The complainants herein are:

> Mr. Dennis Trotter
> Ms. Christina Johnsten
> 281A Hermitage Street
> Philadelphia, PA 19127

3.  The respondent herein is:

> United Lutheran Seminary
> 7301 Germantown Avenue
> Philadelphia, PA  19127

## UNDERLYING FACTS

*Mr. Trotter and Ms. Johnsten file Charges of Discrimination*

4. On November 7, 2018, Mr. Trotter and Ms. Johnsten each filed a charge of discrimination with the EEOC regarding the retaliatory conduct to which they had been subjected to by ULS.[1]

5. The averments in Mr. Trotter's November 7, 2018 charge of discrimination and supporting exhibits (EEOC Charge No. 530-2019-00805) are incorporated into this second charge of discrimination by reference, as if they were set out in full herein.

6. The averments in Ms. Johnsten's November 7, 2018 charge of discrimination and supporting exhibits (EEOC Charge No. 530-2019-00810) are incorporated in this second charge of discrimination by reference, as if they were set out in full herein.

7. The November 7, 2018 charges of discrimination of Mr. Trotter and Ms. Johnsten were dual filed with the Pennsylvania Human Relation Commission ("PHRC").

---

[1] As set forth in their complaints, ULS's conduct also violated the Pennsylvania Human Relation Act, as amended, 43 P.S. § 951. *et seq.*, ("PHRA") and the Philadelphia Fair Practices Ordinance, as amended, § 9-1100, *et seq.*, ("PFPO"), and James Dunlop ("Acting President Dunlop") and Dr. Richard Green ("Interim President Green") aided and abetted ULS's retaliatory conduct and retaliated against Mr. Trotter and Ms. Johnsten in violation of the PHRA and the PFPO.

8. ULS was served with a copy of the November 7, 2018 charges of discrimination of Mr. Trotter and Ms. Johnsten on or about November 9, 2018.

*ULS ignores Ms. Johnsten's applications for open job positions*

9. On December 24, 2018, Ms. Johnsten submitted a complete application for employment to ULS for an advertised open position of Director of Student Services. *See* Exhibit "1".

10. Ms. Johnsten was qualified for the Director of Student Services position.

11. ULS ignored Ms. Johnsten's job application for the Director of Student Services position despite the fact that its website stated that "review of applications will begin immediately".

12. On January 10, 2019, Ms. Johnsten sent a follow-up email to ULS to inquire about the status of her application for the position of Director of Student Services.

13. Shortly after Ms. Johnsten sent her January 10, 2019 follow-up email, ULS removed the Director of Student Services job posting from its website.

14. Upon information and belief, ULS discontinued its search efforts to fill the Director of Student Services position to avoid having to hire Ms. Johnsten to fill that role.

15.    In early January 2018, ULS announced on its website that it was seeking to fill a Director of Admissions position.    *See* Exhibit "2".

16.    ULS designated the Director of Admissions position as "Internal Applicants Only".

17.    Upon information and belief, ULS designated the Director of Admissions position as "Internal Applicants Only", in hopes of deterring Ms. Johnsten from applying for the position.

18.    Ms. Johnsten was qualified for the Director of Admissions position.

19.    On January 15, 2019, Ms. Johnsten submitted a complete application for employment to ULS for the Director of Admissions position.

20.    ULS refused to consider Ms. Johnsten's job applications for the positions of Director of Student Services and Director of Admissions in retaliation for her engagement in the various protected activities listed in her November 7, 2018 charge of discrimination and herein.

21.    ULS refused to consider Ms. Johnsten's job applications for the positions of Director of Student Services and Director of Admissions in retaliation for Mr. Trotter's engagement in the various protected activities listed in his November 7, 2018 charge of discrimination and herein.

4

*Aiding and Abetting*

22.    Upon information and belief, Interim President Green aided and abetted ULS's retaliatory conduct.

*Effects on Mr. Trotter and Ms. Johnsten*

23.    As a result of ULS's unlawful conduct listed in their November 7, 2018 charges of discrimination and herein, Mr. Trotter and Ms. Johnsten have suffered and continue to suffer significant emotional distress and pecuniary losses, including, but not limited to, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of reputation, loss of self-esteem, mental anguish and loss of life's everyday pleasures, and other nonpecuniary losses.

## COUNT ONE

## RETALIATION

### TITLE VII AND THE ADEA

#### MR. TROTTER & MS. JOHNSTEN V. ULS

24.    The averments of this Charge are incorporated into this Count by reference, as if they were set out in full herein.

25.   Section 704(a) of Title VII provides: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees...because he has opposed any practice made an unlawful employment practice by this subchapter, or because he made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

26.   Section 623(d) of the ADEA provides: "It shall be unlawful for an employer to discriminate against any of his employees...because such individual...has opposed any practice made unlawful by this section, or because such individual...has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or litigation under this Act."

27.   The retaliatory conduct that ULS subjected Mr. Trotter to was because of his engagement in the protective activities listed in his November 7, 2018 charge of discrimination and herein.

28.   The retaliatory conduct that ULS subjected Ms. Johnsten to was because of Mr. Trotter's engagement in the protective activities listed in his November 7, 2018 charge of discrimination and herein.

29.    The retaliatory conduct that ULS subjected Ms. Johnsten to was because of her engagement in the protective activities listed in her November 7, 2018 charge of discrimination and herein.

30.    ULS's actions were willful and taken with malice or reckless indifference to the rights of Mr. Trotter and Ms. Johnsten.

31.    ULS, by the improper and unlawful actions cited herein, violated Title VII and the ADEA, which both make it illegal to retaliate against an employee for engaging in protected activities.[2]

## DUAL FILING

32.    This second charge of discrimination is being dual filed with the PHRC.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Trotter and Ms. Johnsten request that ULS be held liable for retaliation under Title VII and the ADEA, and that United Lutheran Seminary be required to provide Mr. Trotter and Ms. Johnsten with their lost wages, actual damages, incidental damages, reinstatement or front pay in lieu thereof, compensatory damages, punitive damages, liquidated damages, damages caused by emotional pain, suffering, inconvenience, mental anguish, loss of reputation, loss of enjoyment of

---

[2] ULS and Interim President Green, by the above cited improper and unlawful actions, also violated the PHRA and the PFPO.

life, and other nonpecuniary losses, and all other appropriate remedies under Title VII and the ADEA.[3]

---

[3] Mr. Trotter and Ms. Johnsten also pray that ULS and Interim President Green be required to provide all pertinent remedies under the PHRA and the PFPO.

**VERIFICATION**

I hereby verify that the statements contained in this Second Charge of Discrimination - Complaint are true and correct to the best of my knowledge, information and belief.  I understand that false statements herein are made subject to the penalties of 18 Pa. C.S. § 4904, relating to unsworn falsification to authorities.

Date:  1.41.209

Dennis Trotter

**VERIFICATION**

I hereby verify that the statements contained in this Second Charge of Discrimination - Complaint are true and correct to the best of my knowledge, information and belief.   I understand that false statements herein are made subject to the penalties of 18 Pa. C.S. § 4904, relating to unsworn falsification to authorities.

Date: 1-31-2019

Christina Johnsten

### INFORMATION FOR COMPLAINANTS & ELECTION OPTION
### TO DUAL FILE WITH THE
### PENNSYLVANIA HUMAN RELATIONS COMMISSION

**Dennis Trotter and Christina Johnsten v. United Lutheran Seminary**

EEOC No.: _____

You have the right to file this charge of discrimination with the Pennsylvania Human Relations Commission (PHRC) under the Pennsylvania Human Relations Act. Filing your charge with PHRC protects your state rights, especially since there may be circumstances in which state and federal laws and procedures vary in a manner which would affect the outcome of your case.

Complaints filed with the PHRC must be filed within 180 days of the act(s) which you believe are unlawful discrimination. If PHRC determines that your PHRC complaint is untimely, it will be dismissed.

If you want your charge filed with the PHRC, including this form as part of your EEOC charge, with your signature under the verification below, will constitute filing with the PHRC. You have chosen EEOC to investigate your complaint, so PHRC will not investigate it and, in most cases, will accept EEOC's finding. If you disagree with PHRC's adoption of EEOC's finding, you will have the chance to file a request for preliminary hearing with PHRC.

Since you have chosen to file your charge first with EEOC, making it the primary investigatory agency, the Respondent will not be required to file an answer with PHRC, and no other action with PHRC is required by either party, unless/until otherwise notified by PHRC.

If your case is still pending with PHRC after one year from filing with PHRC, you have the right to file your complaint in state court. PHRC will inform you of these rights and obligations at that time.

#### [Sign and date appropriate request below]

__X__ I want my charge filed with PHRC. I hereby incorporate this form and the verification below into the attached EEOC complaint form and file it as my PHRC complaint. I request EEOC to transmit it to PHRC.

__X__ *I understand that false statements in this complaint are made subject to the penalties of 18 Pa. C.S. §4904, relating to unsworn falsification to authorities.*

          X _____ 1.31.2019
                Signature and Date

_____ I do not want my charge dual filed with PHRC.

          X _____
                Signature and Date

**INFORMATION FOR COMPLAINANTS & ELECTION OPTION
TO DUAL FILE WITH THE
PENNSYLVANIA HUMAN RELATIONS COMMISSION**

### Dennis Trotter and Christina Johnsten v. United Lutheran Seminary

**EEOC No.:** _____

You have the right to file this charge of discrimination with the Pennsylvania Human Relations Commission (PHRC) under the Pennsylvania Human Relations Act. Filing your charge with PHRC protects your state rights, especially since there may be circumstances in which state and federal laws and procedures vary in a manner which would affect the outcome of your case.

Complaints filed with the PHRC must be filed within 180 days of the act(s) which you believe are unlawful discrimination. If PHRC determines that your PHRC complaint is untimely, it will be dismissed.

If you want your charge filed with the PHRC, including this form as part of your EEOC charge, with your signature under the verification below, will constitute filing with the PHRC. You have chosen EEOC to investigate your complaint, so PHRC will not investigate it and, in most cases, will accept EEOC's finding. If you disagree with PHRC's adoption of EEOC's finding, you will have the chance to file a request for preliminary hearing with PHRC.

Since you have chosen to file your charge first with EEOC, making it the primary investigatory agency, the Respondent will not be required to file an answer with PHRC, and no other action with PHRC is required by either party, unless/until otherwise notified by PHRC.

If your case is still pending with PHRC after one year from filing with PHRC, you have the right to file your complaint in state court. PHRC will inform you of these rights and obligations at that time.

#### [Sign and date appropriate request below]

__X__ I want my charge filed with PHRC. I hereby incorporate this form and the verification below into the attached EEOC complaint form and file it as my PHRC complaint. I request EEOC to transmit it to PHRC.

__X__ *I understand that false statements in this complaint are made subject to the penalties of 18 Pa. C.S. §4904, relating to unsworn falsification to authorities.*

x _Christina Johnsten_
Signature and Date   1-31-2019

_____ I do not want my charge dual filed with PHRC.

x_____
Signature and Date

# EXHIBIT "3"

EEOC Form 161-B (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**NOTICE OF RIGHT TO SUE** *(ISSUED ON REQUEST)*

| To: | **Dennis Trotter**<br>**281 Hermitage Street**<br>**Philadelphia, PA 19127** | From: | **Philadelphia District Office**<br>**801 Market Street**<br>**Suite 1300**<br>**Philadelphia, PA 19107** |
|---|---|---|---|

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **530-2019-00805** | **Legal Unit,**<br>**Legal Technician** | **(267) 589-9700** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court** <u>WITHIN 90 DAYS</u> **of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X] More than 180 days have passed since the filing of this charge.

[ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[X] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court** <u>WITHIN 90 DAYS</u> **of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

*[signature]* Jamie R. Williamson

**Jamie R. Williamson,**
**District Director**

11/14/2019

*(Date Mailed)*

cc:

| **Theresa M. Zechman, Esq.**<br>**STEVENS & LEE**<br>**51 South Duke Street**<br>**Lancaster, PA 17602** | **Scott B. Freeman, Esq.**<br>**FREEMANN LAW OFFICES**<br>**3101 W. Glenwood Avenue**<br>**Suite G103**<br>**Philadelphia, PA 19121** |
|---|---|

Enclosure with EEOC
Form 161-B (11/16)

### INFORMATION RELATED TO FILING SUIT
### UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice.  Therefore, you should **keep a record of this date**.  Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to consult an attorney, you should do so promptly.  Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it.  Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief.  Courts often require that a copy of your charge must be attached to the complaint you file in court.  If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth.  Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office.  If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.  For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit *before 7/1/10 – not* 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.  Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice**.  (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

EEOC Form 161-B (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**NOTICE OF RIGHT TO SUE** *(ISSUED ON REQUEST)*

| To: | Christina Johnsten<br>281a Hermitage Street<br>Philadelphia, PA 19127 | From: | Philadelphia District Office<br>801 Market Street<br>Suite 1300<br>Philadelphia, PA 19107 |
|---|---|---|---|

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **530-2019-00810** | **Legal Unit,<br>Legal Technician** | **(267) 589-9700** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X] More than 180 days have passed since the filing of this charge.

[ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[X] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u>** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Jamie R. Williams*                                    11/14/2019

**Jamie R. Williamson,**                               *(Date Mailed)*
**District Director**

Enclosures(s)

cc:    Theresa M. Zechman, Esq.              Scott B. Freeman, Esq.
       STEVENS & LEE                         FREEMANN LAW OFFICES
       51 South Duke Street                  3101 W. Glenwood Avenue
       Lancaster, CO 17602                   Suite G103
                                             Philadelphia, PA 19121

Enclosure with EEOC
Form 161-B (11/16)

### INFORMATION RELATED TO FILING SUIT
### UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS**   --   **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice.  Therefore, you should **keep a record of this date**.  Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to consult an attorney, you should do so promptly.  Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it.  Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief.  Courts often require that a copy of your charge must be attached to the complaint you file in court.  If so, you should remove your birth date from the charge.  Some courts will not accept your complaint where the charge includes a date of birth.  Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office.  If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS**   --   **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.  For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit **before 7/1/10** -- *not* 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.  Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION**   --   **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE**   --   **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**.  (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*